Joel R. Stubblefield, President Westark Community College 5210 Grand Avenue P.O. Box 3649 Fort Smith, AR 72913-3649
Dear President Stubblefield:
This is in response to your request for an opinion regarding the Arkansas Freedom of Information Act (FOIA), which is codified at A.C.A. §§ 25-19-101—107 (Repl. 1992).
You indicate that, with regard to filling vacancies in employment at Westark Community College ("the college"), it has been the practice of the college not to advertise a "closing date" for receipt of applications, but rather, to utilize a "review date" or "suggested deadline" for receipt of applications. The college then continues to accept applications until the vacant position is filled.
You also indicate that, with regard to requests for inspection of employment applications pursuant to the FOIA, it has been the position of the college that employment applications are to be made available for public inspection only when the vacant position has been filled. That is, until the vacant position is closed to new applicants, information regarding the applicants is not made available for public inspection. You indicate that the college contends that releasing information about a particular applicant prior to filling the vacant position might pose an unfair competitive advantage to other applicants. Thus the college has regarded employment applications as exempt from public disclosure during the search process based on the competitive advantage exemption to the FOIA. Your first question is whether this interpretation of the FOIA is defensible.
In my opinion, while factual issues may arise, the competitive advantage exemption to the FOIA would generally not prevent release of employment applications. Employment applications are, rather, subject to public disclosure under the FOIA as public records.
This office has previously opined that employment applications of both successful and unsuccessful job candidates are "public records" under §§ 25-19-103 and -105(a), and are therefore generally subject to inspection and copying under the FOIA. See
Op. Att'y Gen. Nos. 87-70, 87-108, 87-154, 87-189 and 90-248.
It must be noted, however, that among the circuit courts that have considered the issue, there is a split in the decisions whether employment applications are to be considered "public records" subject to disclosure, or "personnel records" which are exempt from inspection and copying "to the extent that disclosure would constitute a clearly unwarranted invasion of personal privacy." See A.C.A. § 25-19-105(b)(10). This split in decisions was discussed by Professor John Watkins in his book,The Arkansas Freedom of Information Act (m m Press, 1988) as follows:
 In two Pulaski County Circuit Court cases, the question arose as to whether job applications and related materials are personnel records. In Little Rock Newspapers, Inc. v. Board of Trustees of the University of Central Arkansas, an Arkansas Democrat reporter had sought a list of the names of persons who had applied for the position of president of UCA or access to the applications that had been submitted. Circuit Judge Perry Whitmore ruled that these records were not exempt under subsection (b)(10), since they are not `personnel records.' [The] Attorney General . . . had previously reached this result, reasoning that job applicants are not personnel. `In the absence of any legislative or judicial definition of `personnel records,' . . . a reading of the plain language of the act would distinguish a file maintained on an employee from a file containing information on potential employee.' [Op. Att'y Gen. 87-70]
 However, in Little Rock School District v. Little Rock Newspapers, Inc., Circuit Judge Tom Digby ruled that a list of job applicants and the applications themselves are `personnel records' for purposes of subsection (b)(10). The case arose when an Arkansas Democrat columnist made a written request for a list of names of all persons who had applied for the vacant job of superintendent of the Little Rock school district and for access to the applications. Even though the circuit judge determined that these materials qualified as personnel records, he ordered their release after concluding that their disclosure would not constitute a clearly unwarranted invasion of personal privacy.
Watkins, The Arkansas Freedom of Information Act at 86-87.
Accordingly, while this office has consistently stated that employment applications are not personnel records, but public records subject to disclosure under the FOIA, a definitive answer may require judicial interpretation.
With regard to that part of your inquiry which focuses on whether the competitive advantage exemption is applicable to employment applications, it is my opinion that, while such an issue would require a factual determination, the exemption generally does not apply to such records.
While there is an argument that the information in employment applications might qualify for the exemption set out at §25-19-105(b)(9)(A) as records which, if disclosed, would give advantage to competitors, it is my opinion that the argument would not withstand scrutiny. The exemption provides in pertinent part that:
 It is the specific intent of this section that the following shall not be deemed to be made open to the public under the provisions of this chapter: . . . [f]iles which, if disclosed, would give advantage to competitors or bidders. . . .
In Op. Att'y Gen. 91-390, this office stated that the determination as to whether information might be protected from disclosure under the competitive advantage exemption of the FOIA must be made on a case-by-case basis. See Laman v. McCord,245 Ark. 401, 432 S.W.2d 753 (1968). The responsibility of reviewing this information falls on the custodian of the record; but he or she in turn must rely on information supplied by the person in determining the nature of the information. While a person who has submitted employment application information to the college might legitimately claim that his or her information is exempt from disclosure, the burden of proving eligibility for the exemption is upon the person seeking nondisclosure. SeeGannet River States Publishing Co. v. Ark. Indus. Dev. Comm'n.,303 Ark. 684, 799 S.W.2d 543 (1990). The person must prove that the disclosure of proprietary information would cause substantial harm to his or her competitive position before qualifying for the exemption from public disclosure. See Op. Att'y Gen. 87-194. Accordingly, the issue of whether the competitive advantage exemption would apply requires a factual inquiry with a view to all of the surrounding circumstances. It is my opinion, however, as a general matter, that the exemption is not one which would prevent release of employment application information.
Your second question concerns what information may be withheld from job applications once the applications are made available for release. You indicate that the college is aware of "routine things" that are not subject to disclosure.[1] You indicate, however, that an applicant may indicate on his or her employment application whether he or she wants a particular reference and/or employer notified. You state that this option is designed to protect an applicant in his or her current employment, until the applicant becomes a finalist for the position applied for. You have asked, specifically, whether the applicant's employer and references are subject to disclosure under the FOIA, or whether it would constitute an unwarranted invasion of personal privacy to disclose such information.
It must be noted initially, that the inquiry as to whether the disclosure of information constitutes an unwarranted invasion of personal privacy is applicable only when considering the release of personnel records. See A.C.A. § 25-19-105(b)(10). As noted in response to your first question, this office has previously opined that employment applications are generally regarded not as personnel records but as public records which are subject to public disclosure. See discussion, supra. Accordingly, the "unwarranted invasion of personal privacy" test is not applicable to employment applications.
A decision whether to release information in an employment application about the applicant's employer and references instead requires consideration of whether there is some constitutional right to privacy in keeping these names private. It is my opinion that, in general, there is no privacy interest in the names of an applicant's employer and references.
 Although the Arkansas FOIA no longer contains a generally applicable privacy exemption, the supreme court has recognized a constitutional right to `disclosural privacy' which, under certain circumstances, outweighs the right of access to public records established by the FOIA. In McCambridge v. City of Little Rock, [298 Ark. 219, 766 S.W.2d 909 (1989)] the court held that this right to privacy applies to personal matters that: (1) an individual wants to and has kept confidential; (2) can be kept confidential but for the challenged governmental action in disclosing the information; and (3) would be harmful or embarrassing to a reasonable person if disclosed. If these requirements are satisfied, the issue becomes `whether the governmental interest in disclosure under the Freedom of Information Act outweighs the [individual's] privacy interest in the nondisclosure of the personal matter.'
Watkins, The Arkansas Freedom of Information Act: Time for aChange, 44 Arkansas Law Review 535, 595-596 (1991).
Application of this test to the names of an applicant's employer and references requires a case-by-case analysis. With respect to the threshold privacy analysis, for example, individuals may want to keep the name of their current employer private so that they do not suffer retribution at work for seeking other employment. Even if application of the above three factors leads to the conclusion that a viable privacy interest is present, however, that interest can be outweighed by the public interest in disclosure. In applying this balancing test, a court might well conclude that the public's interest in knowing how the government spends its money on hiring employees with certain prior work experience outweighs personal privacy considerations of the job applicants. The McCambridge, supra, decision suggests that the balance might be struck in this manner. "There the court held that `horrible and sickening' crime scene photographs taken during a police investigation of a murder-suicide were open to the public in light of `highly valued' governmental interests `in depicting how the multiple murders occurred, why the police consider the case closed . . ., and why no further action should be taken.'" Id. at 596.
Further support for the conclusion that the names of an applicant's employer and references should be released may be found in a federal case on point, Core v. United States PostalService, 730 F.2d 946 (4th Cir. 1984). Appellant Core, an unsuccessful job candidate, requested information contained in the employment applications of the successful and other unsuccessful applicants. In holding that information about the successful applicants' work history and educational background was available for public inspection, the court wrote: "In short, disclosure of information submitted by the five successful applicants would cause but a slight infringement of their privacy. In contrast, the public has an interest in the competence of the people the Service employs and in its adherence to regulations governing hiring. Disclosure will promote these interests." Core, 730 F.2d at 948.
It is my opinion that whatever privacy interest an individual might have invested in a job application is likely to be overshadowed by the public's legitimate interest in the right to know. The release of the names of an applicant's employer and references would therefore, in my opinion, not invade an applicant's privacy.
Your third question regards release of information concerning "search committees" of the college. You have provided no information regarding what these search committees are; however, you do indicate that the committees are comprised of a cross-section of staff, including managers, faculty, classified support staff, administrators, and occasionally a representative of the community and/or the student body. You indicate that there is a concern that once the names of the committee members are made known, "candidates" might solicit support from the committee members. You have asked whether the college must release the names of the search committee members, and if so, whether the release must be made prior to the search or can the information be withheld until the conclusion of the search process. You also indicate that the college is concerned that the competitive advantage exemption to the FOIA prevents the release of the committee members' names.
It is my opinion that a list of names of members of a "search committee" would fall under the broad definition of a "public record" pursuant to A.C.A. § 25-19-103(1), and would, accordingly, be subject to public disclosure. See A.C.A. §25-19-105(a). It is also my opinion that the competitive advantage exemption is generally not applicable to such a record.See discussion, supra. And with regard to that part of your inquiry which focuses on the timing of the release of public records, it is my opinion that, pursuant to § 25-19-105(e), the record must be made available for public inspection within three days of the request for disclosure, if the record is in active use or storage. This provision applies, in my opinion, whether a "search" is in progress or has been concluded.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Sherry L. Daves.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] It should be noted that certain information, such as social security numbers, unlisted telephone numbers, and specific medical information should be censored from any application before release to the public in keeping with the federal Privacy Act, which prohibits the release of personal identifiers. See
Op. Att'y Gen. 87-189.